ANTHONY P. CAPOZZI, CSBN: 068525
THE LAW OFFICE OF ANTHONY P. CAPOZZI
1233 West Shaw Avenue, Suite 102
Fresno, California 93711
Telephone: (559) 221-0200
Facsimile: (559) 221-7997
E-Mail: Anthony@ capozzilawoffices.com
www.capozzilawoffices.com

Attorney for Defendant,
JIA BEI ZHU, aka JESSE ZHU, QIANG HE
And DAVID HE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

******

| | |
|---|---|
| UNITED STATES OF AMERICA.<br><br>Plaintiff,<br><br>v.<br><br>JIA BEI ZHU, aka, JESSE ZHU, QIANG HE and DAVID HE<br><br>Defendant. | CASE NO.: 1:23-CR-00219-NODJ-BAM<br><br>**APPEAL OF DETENTION ORDER**<br><br>Date: July 17, 2024<br>Time: 8:30 a.m.<br>Hon. Dale A. Drozd |

Defendant, Jia Bei Zhu, aka Jesse Zhu, Qiang He and David He, moves by and through his attorney, Anthony P. Capozzi.

A complaint was filed on October 18, 2023, charging the defendant with violations of 21 U.S.C. § 331(a) and (c) along with 18 U.S.C. 1001(a)(1)-(3).

At the defendant's first appearance by zoom he was temporarily detained on October 24, 2023. **At the defendant's initial appearance, the court made a true name finding that the defendant's name was David He, (<u>Exhibit A</u>,** Docket Sheet #10)

The defendant was Indicted on November 10, 2023, (Docket #14) on two Counts of distribution of Adulterated and Misbranded Medical Devices, which occurred on December 28, 2020, and January 24, 2022. (**<u>Exhibit A</u>**, Docket Sheet).

The defendant was also charged with making false statements that were recorded on a body camera in an interview with agents of the United States Food and Drug Administration. The alleged false statements are as follows:

1. He was not Zhu or Jesse Zhu, and that he was instead Qiang He, aka David He;
2. He was hired by UMI as a Covid-19 consultant in 2021;
3. He was hired by PBI, just a couple of weeks prior to speaking with FDA officials, to coordinate the company's interactions with government agencies;
4. He did not know the manufacturing and distribution history for UMI or PBI; and
5. He did not have access to UMI or PBI's distribution records, financial records, or ownership records. (**Exhibit B**, Indictment)

The defendant's original name is Jia Bei Zhu who had his name changed in China and has used the name Qiang He and David he.

The defendant has a Chinese passport in the name of Qiang He. (**Exhibit C**, Passport)

The defendant filed for asylum from China on February 19, 2021. (**Exhibit D**)

The defendant changed his name in the United States from Qiang He to David He on August 3, 2021. (**Exhibit E**, Court documents)

The defendant has a driver authorization card in Nevada in the name of David He issued on September 12, 2023. (**Exhibit F**)

On November 22, 2023, the defendant was ordered detained. (**Exhibit G**, Transcript)

On Page 14:21-16:3, the Honorable Judge Stanley Boone determined that the government by a preponderance of the evidence established that the defendant was a flight risk and obstructed justice.

The Judge found that there were no conditions or a combination of conditions that would reasonably assure his appearance. The Court did consider the nature and circumstances of the offense as factors in assessing whether the defendant should be released on conditions. (RT 15:14-18)

The Court was concerned with the different names the defendant used irrespective of the proffer that the defendant changed his name, stating that this was not easily done, and it requires a legal process in order to effectuate a name change in the United States. (RT 15:19-25)

The Government argued that the defendant was a flight risk because six days after the government executed a search warrant at the Reedley Lab, flight records obtained by Homeland Security show that the defendant's newborn son and his mother Zhaoyan Wang flew on a one-way ticket to China. (RT 4:1-17)

The Government failed to point out that the airline tickets were booked on September 3, 2023, with flights scheduled for September 20, 2023. (**Exhibit H**, Declaration of Zhaoyan Wang regarding airline booking in Chinese and its translation. (Attachment 1)

Ms. Wang and her son were not aware of the search warrant which was served on September 13, 2023. (Compliant, Page 20, Paragraph 70, Docket Sheet #1) when the tickets were purchased.

The intention of Ms. Wang was to fly back to China on a one-way ticket to visit family and at a later date purchase a round-trip ticket from China to the United States and later return to China. (**Exhibit H**, Declaration of Ms. Wang)

The defendant is a Chinese citizen with a Chinese passport and lives in a house in Las Vegas, Nevada that is owned by David Destiny Discovery.

Ms. Wang states in her declaration that David Destiny Discovery, LLC., invests in real estate with money from her family in China.

Ms. Wang also states in her declaration that:

a) Universal Meditech Inc., (UMI) was established in 2015, and it is engaged in research development, manufacturing, and sales of medical invitro diagnostic reagents.

Wang Xiaoxiao is the current CEO of UMI with two shareholders. 70% is Guandgdi Packaging Co. Ltd., registered in Qingdao, China, and 30% is MeSauce, registered in Nevada.

Ms. Wang is the company manager. The main investment comes from China and the technology comes from China and Canada.

b) Prestige Biotech Inc., PBI was established in 2021, and is engaged in the investment and management of medical diagnostic company's sole shareholder and investor.

c) David Destiny Discovery, LLC., "3D" was established in 2022. "3D" is engaged in the sale, operation, and management of Las Vegas real estate. It is registered in Las Vegas. Ms. Wang is the company manager.

"3D" is willing to post two properties as collateral: 979 Sugar Springs Drive, Las Vegas, Nevada and 1336 N. Blackwood in Clovis, California.

On April 24, 2024, at the second detention hearing, Zhaoyan Wang was willing to post a "3D" property in Las Vegas, Nevada, at 979 Sugar Springs Drive, and as collateral. The property is valued at approximately $850,000. The rental property at 1336 N. Blackwood in Covis, California valued at approximately $450,000, would also be posted as collateral.

Mr. He would propose to live in the 979 Sugar Springs Drive Las Vegas, Nevada residence, with an ankle bracelet, GPS monitoring and surrender his Chinese passport.

Further Mr. He would propose having two third party custodians, Michael Lin, his Las Vegas attorney, and Ori Soloman, the property manager of 3D properties in Las Vegas.

Defendant argued the total value of properties at $1.3 million, ankle bracelet, GPS monitoring, surrendering his passport and two third party custodians, along with the defendant's claims and lawsuit against the City of Reedley, County of Fresno, and the United States Government, in addition to a lawsuit against owners of 3900 N. Blattella Lane, in Fresno are sufficient factors to ensure that Mr. He would not be a flight risk. (**Exhibit I**, April 24, 2024, Transcript)

## Statement of the Law

"In our society liberty is the norm and detention prior to trial or without trial is the carefully limited exemption" ...*United States v. Salerno, 481 U.S. 739, 755 (1987).*

Consequently, courts may detain a defendant prior to trial only when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142(b); see also *United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008).* If the court determines that there are conditions that will reasonably assure the defendant's appearance and the safety of the community, it must release the defendant from pretrial detention under the least restrictive of those conditions. *United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985).*

**Standard**

**In the trial court the government must establish risk of flight by a clear preponderance of the evidence.** *United States v. Motamedi, 767 F2 1403, 1405 (9th Cir. 1985).*

In considering risk of flight, the court must take into consideration available information concerning the nature and circumstances of the offense charges, the weight of the evidence against the person, the history and characteristic of the person, including his character, physical and mental condition family ties, employment, appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the persons release. 18 U.S.C. § 142 (q) (1984).

The *Motamedi* Court emphasized that the wight of the evidence is the least important of the various factors. (citations omitted) by impermissibly making a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment (citations omitted), *Motamedi at 1408.*

The Motamedi court emphasized that alienage, upon which the district court also placed much weight, may be taken into account, but it did not point conclusively to a determination that *Motamedi* posed serious flight risk. (citations omitted) at 1408.

In *United States v. Diaz-Hernandez, 943 F3 1196, 1198 (9th Cir. 2019),* the court stated:

"On a motion for pretrial detention, the government has the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." (citations omitted) Any

doubt regarding the propriety of pretrial release is to be rendered in favor of the defendant. (Citations omitted.

In *United States v. Xulam, 84 F3 441, 442 (D.C., Cir. 1996),* a Kurd from Turkey was charged with making a false statement in a passport application by applying for and obtaining an American passport under a false name. The Immigration Service was undertaking an investigation which would result in the defendant's deportation and lodged a detainer to take effect upon his release.

The magistrate and the district court, on motion of the government, ordered that the defendant be detained pending trial solely as a flight risk.

Under 18 U.S.C. § 3142 (c) (1994) when the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a "preponderance of the evidence." (citations omitted) at 442. The preponderance must, of course, go to the ultimate issue: that no combination of conditions--either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful-- can "reasonably" assure that the defendant will appear for trial, 18 § U.S.C.3142(c).

The court found that the government did not meet its burden of establishing risk of flight citing cases where even though the defendant was clearly capable of obtaining false identification, as demonstrated by a prior conviction for crime involving fraudulent identification…his strong commitment to advocating for Kurdish cause in the United States would seem to mitigate against, not in favor of, flight since the only way he can pursue that cause is publicly, within the human rights community…*at 443.*

In *United States v. Jose Diaz-Hernandez, 943 F3 1196, 1199 (9th Cir. 2019)* the court held that the "individualized evaluation" required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if release from criminal custody, would be held in immigration custody.

## Argument

David He, like the defendant's in *Motamedi* and *Xulam supra* is being held as a risk of flight not as a danger to the community.

The evidence in this case against Mr. He is a short video tape of an interview with the defendant as to his name and position with two companies, Universal Meditech Inc., "UMI" and Prestige Biotech Inc., "PBI". Two other charges allege mailing of misbranded products from "UMI", where the defendant had no involvement and the evidence shows no ties to the defendant, David He.

The defendant applied for asylum in the United States from China, he has a multi-million-dollar lawsuit pending against the United States Government, the City of Reedley, California and the County of Fresno. (**Exhibit J**)

Like the defendant's in *Motamedi* and *Xulam,* there is no incentive to flee. Even with a conviction in this case the guideline range is as follows:

| Statutes | Guideline | Offense Level |
| --- | --- | --- |
| 18 § 331(a) | 2N2.1 | 6 |
| 18 § 333 (a)2 | 2B1.1 | 6 + loss |
| 18 § 10001(a)(2) | 2B1.1 | 6 |

With any possible enhancements the guideline range might go up to a guideline level of 14, which has a guideline range of 15-21 months with Criminal History Category I.

The defendant will not plead guilty. If he did his guideline level would be reduced by three levels to 11 with a guideline range of 8-14 months.

The defendant was arrested on October 19, 2023, as of July 17, 2024, he will have been in custody for 9 months.

Upon a conviction, with credit for good time or without such credit, the defendant would have served his sentence.

Mr. He has reasons to remain in the United States with the pending indictment, his lawsuit, preparation of the lawsuit and the fact that he has applied for asylum in the United States is a strong indication he will remain in the United States to fight this case, and pursue the

caused by the destruction of the warehouse in Reedley, California and his equipment along with the damages caused by physical abuse by the offers upon his arrest.

**Conclusion**

It is respectfully requested that the defendant, David He, be released with the combination of conditions requested by Pre-trail Services.

Dated: December 21, 2023,

By: */s/ Anthony P. Capozzi*____________
ANTHONY P. CAPOZZI, Attorney for
DAVID HE