ANTHONY P. CAPOZZI, CSBN: 068525
THE LAW OFFICE OF ANTHONY P. CAPOZZI
1233 West Shaw Avenue, Suite 102
Fresno, California 93711
Telephone: (559) 221-0200
Facsimile: (559) 221-7997
E-Mail: Anthony@ capozzilawoffices.com
www.capozzilawoffices.com

Attorney for Defendant,
DAVID HE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

******

| | |
|---|---|
| UNITED STATES OF AMERICA.<br>Plaintiff,<br>v.<br>DAVID HE,<br>Defendant. | CASE NO.: 1:23-CR-00219-NODJ-BAM<br>**MOTION FOR REVIEW OF DETENTION ORDER**<br>Date: January 13, 2025<br>Time: 09:30 a.m.<br>Hon. Dale A. Drozd |

Defendant, David He, moves by and through his attorney, Anthony P. Capozzi for a review of the detention order.

**<u>Statement of the Case</u>**

A complaint was filed on October 18, 2023, charging the defendant with violations of 21 U.S.C. § 331 (a) and (c) along with 18 U.S.C. 1001(a)(1)-(3). (**<u>Exhibit A</u>**, Docket)

At the defendant's first appearance by zoom he was temporarily detained on October 24, 2023. **At the defendant's initial appearance, the court made a true name finding that the defendant's true name was David He, (<u>Exhibit A</u>, Docket # 10)**

The defendant was indicted on November 16, 2023, on two counts of Distribution of Adulterated and Misbranded Medical Devices, which occurred on December 28, 2020, and January 24, 2022. (**<u>Exhibit A</u>**, Docket # 14)

The defendant was also charged with making false statements that were recorded on a body camera in an interview with agents of the United States Food and Drug Administration. The alleged false statements are as follows:

1. He was not Zhu or Jesse Zhu, and that he was instead Qiang He, aka David He;
2. He was hired by UMI as Covid-19 consultant in 2021;
3. He was hired by PBI, just a couple of weeks prior to speaking with FDA officials, to coordinate the company's interactions with government agencies;
4. He did not know the manufacturing and distribution history for UMI or PBI; and
5. He did not have access to UMI or PBI's distribution records, financial records, or ownership records. (**Exhibit B**, Indictment, Docket # 14)

The defendant's original name is Jia Bei Zhu who had his name changed in China to Qiang He.

The defendant has a Chinese passport in the name of Qiang He. (**Exhibit C**, Passport) The defendant filed for asylum from China on February 19, 2021. (**Exhibit D**)

The defendant changed his name in the United States from Qiang He to David He on August 3, 2021. (**Exhibit E**, Court documents).

The defendant has a driver authorization card in Nevada in the name of David He, issued on September 12, 2023. (**Exhibit F**)

On November 22, 2023, the defendant was ordered detained. (**Exhibit G**, Detention Order, Docket #19).

On Page 14:21-16:3 of the November 22, 2023, transcript, Judge Stanley Boone determined that the government established that the defendant was a flight risk and obstructed justice by a preponderance of the evidence. (**Exhibit H**- Transcript of Detention Hearing, Docket #29).

The Court found that there were no conditions or a combination of conditions that would reasonably assure his appearance. The Court did consider the nature and circumstances of the offense as factors in assessing whether the defendant should be released on conditions. (RT 15:3-13) (**Exhibit H**- Transcript of Detention Hearing, Docket #29)

The Court was concerned with the different names that defendant used irrespective of the proffer that the defendant changed his name, stating that his was not easily done, and it requires a legal process in order to effectuate a name change in the United States. (RT 15:19-25) (**Exhibit H**- Transcript of Detention Hearing, Docket #29)

The Government argued that the defendant was a flight risk because six days after the government executed a search warrant at the Reedley Lab, flight records obtained by Homeland Security show that the defendant's newborn son and his mother Zhaoyan Wang flew on a one-way ticket to China. (RT 4:10-17) (**Exhibit H**-Transcript of Detention Hearing, Docket #29)

The Government failed to point out that the airline tickets were booked on September 3, 2023, with flights scheduled for September 20, 2023. (**Exhibit I**, Declaration of Zhaoyan Wang regarding airline booking in Chinese and its translation. (Attachment 1)

Ms. Wang and her son were not aware of the search warrant which was served on September 13, 2023. (**Exhibit I**, Declaration of Zhaoyan Wang)

The defendant is a Chinese citizen with a Chinese passport and lived in a house in Las Vegas, Nevada that is owned by David Destiny Discovery, LLC.

Ms. Wang states in her declaration that David Destiny Discovery, LLC, invests in real estate with money from her family in China.

Ms. Wang also states in her declaration that:

a) Universal Meditech Inc., (UMI) was established in 2015, and it is engaged in research development, manufacturing, and sales of medical invitro diagnostic reagents.

Wang Xiaoxiao is the current CEO of UMI with two shareholders. 70% is Guandgdi Packaging Co. Ltd., registered in Qingdao, China, and 30% is MeSauce, registered in Nevada.

Ms. Wang is the company manager. The main investment comes from China and the technology comes from China and Canada.

b) Prestige Biotech Inc., PBI was established in 2021, and is engaged in the investment and management of medical diagnostic company's sole shareholder and investor.

c) David Destiny Discovery, LLC., "3D" was established in 2022. "3D" is engaged in the sale, operation, and management of Las Vegas real estate. It is registered in Las Vegas. Ms. Want is the company manager.

"3D" is willing to post two properties as collateral: 979 Sugar Springs Drive, Las Vegas, Nevada and 1336 N. Blackwood in Clovis, California. (**<u>Exhibit I,</u>** Declaration of Zhaoyan Wang)

Zhaoyan Want is willing to post a "3D" property in Las Vegas valued at approximately $850,000. The rental property at 1336 N. Blackwood in Clovis, California valued at approximately $450,000, would also be posted as collateral.

Mr. He would propose to live in the 979 Sugar Springs Drive Las Vegas, Nevada residence with an ankle bracelet, GPS monitoring and surrender his Chinese passport.

Further Mr. He would propose having two third party custodians, Michael Lin, his Las Vegas attorney, and Ori Soloman, the property manager of 3D properties in Las Vegas

On April 24, 2024, Judge Grojean denied Mr. He's motion for bail review upholding Judge Boone's prior detention order (**<u>Exhibit A</u>**, Docket#48, and **Exhibit J**, Transcript of April 24, 2024, hearing, Dockets#50).

**It should be noted that the Pre-trial office had recommended that Mr. He be released with certain conditions.**

On July 8, 2024, Mr. He filed an Appeal of the Detention Order. (**<u>Exhibit A</u>**, Docket #63)

On July 17, 2024, District Court Judge Dale A. Drozd denied the motion for bail review without prejudice. (**<u>Exhibit A</u>**, Docket #76) Attached as **<u>Exhibit K</u>**, is the transcript of the proceeding on July 17, 2024)

On August 15, 2024, a First Superseding Indictment (**<u>Exhibit L</u>**, Superseding Indictment) was returned charging David He and including Zhaoyan Wang as a defendant which is the mother of Mr. He's son and the managing partner of David Destinay Discovery LLC, the owner of both properties pledged as collateral for Mr. He. (**<u>Exhibit I</u>**, Declaration of Zhaoyan Wang)

David Destiny Discovery LLC., was established in 2022 and is mainly engaged in the sole operation and management of Las Vegas real estate. Funds from Zhaoyan Wang's family were used to purchase both properties. (**Exhibit I**, Declaration of Zhaoyan Wang)

On May 6, 2024, Universal Meditech Inc., and David He filed a civil rights lawsuit against the City of Reedley, Jeremy Harrison, Jesalyn Harper, Jeffery Isaak, County of Fresno, Humbert Prado, Jeffrey Maurice and Meridahl Mather in the United States District Court of the Eastern District, Case No.: 1:24-CV-00528-JLT-EPG, **Exhibit M**, Complaint)

The lawsuit alleges the unlawful seizure and destruction of property in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 and a Bivens Action pursuant to 28U.S.C. § 2679(b)(2)(A) while the federal officers intentionally and recklessly deprived UMI and Mr. He of the rights, privileges and immunities under the United States Constitution and specifically as to Mr. He to be free from unreasonable and excessive force and unreasonable search, seizure and deprivation of property. As a result of the officer's violation of their constitutional right UMI and Mr. He suffered substantial damage. (**Exhibit N**, Declaration of Anthony P. Capozzi with pictures of Mr. He, taken on October 20th, and 24th, 2023).

**Exhibit O**, Docket in UMI & David He v City of Reedley et al Case No.: 1:24-CV- 528-JLT-EPG.

Motions to Dismiss and the Reply by the Plaintiffs are presently under submission to the Court. (**Exhibit O**, Docket #15)

A Motion to Dismiss by Defendant's Mather and Maurice was filed on October 30, 2024, **Exhibit O**, Docket 28. Opposition to the Motion to Dismiss was filed on November 13, 2024. **Exhibit O**, Docket # 29)

On November 15, 2024, the court took all motions under advisement, **Exhibit O**, Docket 30.

## Statement of the Law

"In our society liberty is the norm and detention prior to trial or without trial is the

carefully limited exception" ...*United States v. Salerno, 481 U.S. 739, 755 (1987).* Consequently, courts may detain a defendant prior to trial only when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142(b); see also *United States v. Hir, 517 F.3d1081, 1086 (9th Cir. 2008).* If the court determines that there are conditions that will reasonably assure the defendant's appearance and the safety of the community, it must release the defendant from pretrial detention under the least restrictive of those conditions. *United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985).*

**Standard**

In the trial court the government must establish risk of flight by a clear preponderance of the evidence. *United States v. Motamedi, 767 F2 1403, 1406(9th Cir. 1985)*

In considering risk of flight, the court must take into consideration available information concerning the nature and circumstances of the offense charges, the weight of the evidence against the person, the history and characteristic of the person, including his character, physical and mental condition family ties, employment, appearance at court proceedings, and nature and seriousness of the danger to any person or the community that would be posed by the persons release. *18 U.S.C. 3142 (g) (1984).*

The *Motamedi* Court emphasized that the weight of the evidence is the least important of the various factors (citations omitted) by impermissibly making a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment (citations omitted), *Motamedi* at 1408. Further, alienage upon which the district court also placed much weight, may be taken into account, but it did not point conclusively to a determination that *Motamedi* posed serious flight risk. (citations omitted) *at 1408.*

In *United States v. Diaz-Hernandez, 943 F3 1196, 1198 (9th Cir. 2019),* the court stated:

"On a motion for pretrial detention, the government has the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." (citations omitted) Any doubt regarding the propriety of pretrial release is to be rendered in favor of the defendant. (citing *United States v. Townsend, 897 F2d 989, 994 (9th 1990)*

In *United States v. Xulam, 84 F3 441, 442(D.C., Cir. 1996)*, a Kurd from Turkey was charged with making a false statement in a passport application by applying for and obtaining an American passport under a false name. The Immigration Service was undertaking an investigation which would result in the defendant's deportation and lodged a detainer to take effect upon his release. *Xulam* subsequently made two name changes and informed the passport authorities of the changes. *at 444.*

The magistrate and the district court, on motion of the government, ordered that the defendant be detained pending trial solely as a flight risk.

Under 18 U.S.C. § 3142(c) (1994) when the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a "preponderance of the evidence." (citations omitted) at 442. The preponderance must, of course, go to the ultimate issue: that no combination of conditions—either those set out in the Bail Reform Act itself or any others that the magistrate of judge might find useful—can "reasonably" assure that the defendant will appear for trial, 18 U.S.C. 3142(c).

The act sets out a number of conditions which may be used to ensure appearance, in including, inter alia:

1. Remaining in custody of a designated person who agrees to assume supervision and to report any violation of a release condition;
2. Maintain employment;
3. Restrictions on place of abode or travel;
4. Reporting or a regular basis to a designated law enforcement agency;
5. Comply with a curfew;
6. Execute a bond, or;
7. Any condition that the court deems "reasonably necessary" to assure appearances. 18 U.S.C. § 3742(c)

The trial court ordered the defendant to be detained on the basis of the false statement in

the passport application and the possibility of deportation. The trial court referred several times to the notion that if the defendant were to flee, his supervisor could not stop him.

The appellant court mentioned that this was true of every defendant released on conditions but that was not the standard authorized by law for determining whether pretrial detention is appropriate. Section § 3142 mentions conditions that will "reasonably" assure appearances, not guarantee it. *at 444.*

The appellate court ultimately determined that the government did not meet its burden of establishing risk of flight and stated that the records contained more than enough to satisfy the "reasonable" assurance test and not enough to show by a preponderance of the evidence that no combination of conditions will assure the defendant's appearance.

The appellant court stated that despite the large discretion normally accorded the trial court in this area, we revoke the order of deportation. *at 444.*

In *United States v. Diaz-Hernandez, 943 F 3d 1196 (9th Cir. 2019),* the defendant was charged with one count of being a removable alien found in the United States. The court denied the government's motion for detention and ordered him released on a $10,000 appearance bond secured by a $25,000 cash deposit.

The government appealed arguing that the defendant lacked legal status in the Untied States, the weight of the evidence against him was heavy and therefore facing a substantial prison sentence before being removed from the country. Furthermore, the defendant had served a 56-month sentence following a prior conviction for illegal entry.

The defense argued that since the defendant was subject to an immigration detainer, he should be released since the detainer would negate any risk of flight. *at 1196.*

The appellate court stated that an immigration detainer cannot support the categorical denial of bail, nor can an immigration detainer support the categorical grant of bail. The Bail Reform Act mandates an "individualized evaluation" guided by factors in § 3142(a). *at 1196.*

The *Diaz-Hernandez* court concluded that the "individualized evaluation" required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody.

Immigration status is not an articulated factor in §3142(g). Further detention of a "criminal" defendant pending trial pursuant to the Bail Reform Act and detention of a removable alien pursuant to the Immigration and Nationality Act are separate functions that serve separate purposes and are performed by different authorities (citations omitted) The court ultimately stated that a district court may not speculate as to what may or may not happen in the future to the defendant under a different statutory and regulatory regime. at 1198.

A "risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition. Citing *United States v. Santos Flores, 794F 3d 1088 at 1091.*

The court in *Jose Diaz-Hernandez, 943 F3d 1196, 1199(9th Cir. 2019)* ultimately held that the "individualized evaluation" required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released form criminal custody, would be held in immigration custody.

David He, like the defendants in *Motamedi, Xulam*, and *Diaz-Hernandez supra* is being held as a risk of flight not as a danger to the community.

The evidence in this case against Mr. He is a short video tape of an interview with the defendant as to his name and position with two companies, Universal Meditech Inc., "UMI" and Prestige Biotech Inc., "PBI". Two other charges allege mailing of misbranded products from "UMI", where the defendant had no involvement and the evidence shows no ties to the defendant, David He.

The defendant applied for asylum in the United States from China, (**Exhibit D**) he has a multi-million-dollar lawsuit pending against the United States Government, the City of Reedley, California and the County of Fresno in Universal Meditech, Inc. and David He v. City of Reedley et al, Case No.: 1:23-W-528-JLT-EPG presenting pending before the court. (**Exhibit M**)

As in the *Motamedi, Xulam* and *Diaz-Hernandez* cases, supra, there is no incentive to flee nor is there a preponderance of evidence that Mr. He would flee.

Mr. He does not want to leave the Untied States, he has applied for asylum (**Exhibit D**) has legally changed his name, (**Exhibit E**) has been involved in business in the United States, with laboratories in Tulare, Fresno and a warehouse in Reedley, California. Evidence would

establish that Mr. He and Meditech Inc. were preparing to build a laboratory in Fresno, California while the equipment and various items were stored in Reedley, California when the government seized and destroyed the equipment and items at the Reedley warehouse.

With a conviction in this case the guidelines are as follows:

| Statutes | Guideline | Offense Level |
|---|---|---|
| 18 § 331 (a) | 2N2.1 | 6 |
| 18 § 333 (a) 2 | 2B1.1 | 6 + loss |
| 18 § 10001(a)(2) | 2B1.1 | 6 |

With any possible enhancements the guideline range might go up to a guideline level of 14, which has a guideline range of 15-21 months with Criminal History Category I.

The defendant will not plead guilty. If Mr. He pleaded guilty he did his guideline level would be reduced by three levels to 11.

The Safety Valve provision would also apply under 5C1.2 or under the First Step Act which would result in another two-point reduction further reducing the offense level to 9. With the criminal history category I, Mr. He would have a guideline range of 4-10 months.

**Mr. He was arrested on October 19, 2023, has had been in custody since that date (OVER THIRTEEN MONTHS).**

If Mr. He was convicted, with credit for good time (15% reduction) or even without such credit, Mr. He will have served his sentence and much more. Such an outcome would strain the fabric of law beyond reason and result in an injustice to Mr. He.

## **Proposal**

The defense would post David Destiny Discovery, LLC property in Las Vegas, Nevada, at 979 Sugar Springs Drive, and as collateral. The property is valued at approximately $850,000. The rental property at 1336 N. Blackwood in Clovis, California valued at approximately $450,000, would also be posted as collateral.

Mr. He would propose to live in the 979 Sugar Springs Drive, Las Vegas, Nevada residence, with an ankle bracelet, GPS monitoring and surrender his Chinese passport.

Further Mr. He would propose having two third party custodians, Michael Lin, his Las Vegas attorney, and Ori Soloman, the property manager of David Destiny Discovery, LLC, properties in Las Vegas.

## Conclusion

Mr. He has substantial and significant reasons not to abscond or flee in this case. He needs to meet with his attorney to prepare for the defense of the criminal case, peril of the civil rights case, and proceed with the asylum application all are strong reason to remain in the United States.

The defendant has proposed posting at total value of $1.3 million dollars of property with the court, wear an ankle bracelet with GPS monitoring, surrender his Chinese passport along with two third party custodians near his residence in Las Vegas.

It is respectfully requested that the defendant, David He, be released with the combination of conditions proposed by Pre-Trial Office.

Dated: November 12, 2024,

By: */s/ Anthony P. Capozzi*
ANTHONY P. CAPOZZI, Attorney for
DAVID HE