# EXHIBIT

# H

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 23CR00219-ADA-BAM |
| Plaintiff, | ) | Fresno, California |
| vs. | ) | Wednesday, November 22, 2023 11:00 a.m. |
| JIA BEI ZHU, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE STANLEY A. BOONE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | JOSEPH BARTON, ESQ.<br>United States Attorney's Office<br>2500 Tulare Street<br>Suite 4401<br>Fresno, California 93721<br>(559) 497-4000 |
| For the Defendant: | ANTHONY P. CAPOZZI, ESQ.<br>Law Offices of Anthony P. Capozzi<br>1233 West Shaw Avenue<br>Suite 102<br>Fresno, California 93711<br>(559) 221-0200 |
| For Pretrial Services: | BRIAN J. BEDROSIAN<br>Robert E. Coyle Federal Courthouse<br>2500 Tulare Street<br>Suite 3601<br>Fresno, California 93721 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Court Recorder: Corina Lopez Amador
United States District Court
Eastern District of California
2500 Tulare Street
Fresno, California 93721

Transcriber: Crystal Thomas
Echo Reporting, Inc.
9711 Cactus Street
Suite B
Lakeside, CA 92040
(858) 453-7590

FRESNO, CALIFORNIA WEDNESDAY, NOVEMBER 22, 2023 11:00 A.M.

--oOo-

THE CLERK: All rise. Court is now in session before the Honorable Stanley A. Boone.

THE COURT: Good morning. Please be seated.

All right. Let's go to Number 2 on the calendar, United States Attorney versus Jia Bei Zhu, a/k/a David He.

Appearances, please.

MR. CAPOZZI: Good morning, your Honor. Tony Capozzi appearing with the Defendant, who is present in court, being assisted by a Spanish interpreter.

THE COURT: Good morning, Mr. Capozzi. That's just that mic. Thank you.

MR. BARTON: Good morning, your Honor. Joe Barton for the Government.

THE COURT: Good morning.

All right. So this matter is on for a detention hearing. I received information, Mr. Capozzi, that you were going to submit?

MR. CAPOZZI: Yes, your Honor.

THE COURT: Okay. All right.

Mr. Barton, anything further for the record?

MR. BARTON: Yes, your Honor. The Government will -- I understand that the Defendant is submitting --

THE COURT: Okay.

MR. BARTON: -- and the Government would also, in this case, given that it is the Government's burden --

THE COURT: Yes, please.

MR. BARTON: -- would quickly add a couple things into evidence for it (sic).

So, formally, the Government is moving for detention on the basis of a flight risk, and also a serious risk of obstructing justice under 3142(f)(2)(A) and (B). First, the Defendant -- who the Government alleges is Mr. Jia Bei Zhu -- the Government border-crossing records show that he has crossed the U.S. border over 40 times. He most recently did so in 2015. The Government obtained his fingerprints from a visa application that was submitted to the Government. The application was denied, but that is how the Government got his fingerprints.

THE COURT: What was the name on the visa application?

MR. BARTON: Jia Bei Zhu.

THE COURT: Jia Bei Zhu, not David He?

MR. BARTON: Not David He.

THE COURT: Okay.

MR. BARTON: And then from -- 2015 was the last record, border-crossing record, the Government has of Mr. Zhu, on a flight from Canada into Los Angeles, and then David He, or David He, applies for an immigration benefit in 2021,

also provides fingerprints and other biometrics. Those biometrics and fingerprints are a direct match to the fingerprints that were provided for Jia Bei Zhu back in 2015.

Then, in -- that's one piece of evidence of how the Government believes that Mr. Zhu is David He, or vice versa. The other evidence is the driver's license that was found during the search warrant at the Reedley lab. There was a Canadian driver's license in the name of Jia Bei Zhu, with a photograph on it dated 2014. The Government found that photograph and compared it to Mr. Jia Bei Zhu or Mr. He, who was arrested. They believe it's the same person. That photograph of the driver's license is set forth in the complaint.

Also, the Government talked to several employees who had worked at the Reedley lab and previously at the company's Fresno facility, showed them photographs of Mr. He or Jia Bei Zhu, and they confirmed they knew him at Jia Bei Zhu or Jesse (phonetic) Zhu, and not David He. So those buckets of evidence are the basis of the Government's allegation that Mr. He is, in fact, Mr. Jia Bei Zhu.

In addition, the Government believes the Defendant poses an extreme flight risk, and particularly, about six days after the Government executed the federal search warrant at the Reedley lab, flight records obtained by Homeland Security show that Mr. Zhu's son -- he has a newborn son. He

did not disclose that to Pretrial Services, but the Government believes he has a newborn son who was born earlier this year, and the mother is listed as a Ms. Wang.

On the son's passport application, Mr. He's name is listed, so he goes on the application as being the son's father, saying he is Mr. He -- or Mr. He -- and Ms. Wang -- it says they live at the same address in Las Vegas. It's the Sugar Springs address, which will be relevant here in a minute.

But, more importantly, flight records show that, six days after the search warrant, the mom, the son, and the mom's mother, so the son's grandmother, took one-way flights to China, with no return dates. The Government believes they're fleeing, and they're trying to get out of the country. They have -- based on the last check by the Government, they have not returned and have no plans to return to this country.

The Government is not sure that he is married to the son's mother, but he does have a relationship with her. It seems they share an address. They are also listed as the principals on a company called David Destiny Discovery, which the address for that company is a residence in Vegas. It's the same residence that's listed on the child -- the newborn child's passport application that Ms. Wang and Mr. He share. The Government believes that that business, to the extent

that it is an actual business, is operated out of that residence by them.

And then, more importantly, from there, David Destiny Discovery, based on bank records obtained by the Government -- the Government has shown that, just in the month of September of 2023 alone, there has been over $250,000 transferred to David Destiny Discovery. Those checks are being deposited by Mr. He into bank accounts that he's on.

THE COURT: When you say, "Mr. He," are you giving me the name that's being used?

MR. BARTON: Yes.

THE COURT: Okay.

MR. BARTON: Yes, I am, your Honor.

THE COURT: All right. Thank you.

MR. BARTON: We believe it's the same person, but that's the name that's being used.

THE COURT: Got it.

MR. BARTON: In the Government's view, it appears that Mr. Jia Bei Zhu is trying to fully assume the identity of Mr. He at this time in all aspects of his dealings.

Further investigation by the Government found that the properties -- this company, David Destiny Discovery, is currently the owner on a house in Clovis valued at approximately $500,000, a house in Las Vegas valued at

approximately $800,000, two condos in Las Vegas that together are worth approximately $800,000. Again, David Destiny -- Mr. He and Wang, the mother of Mr. Wang's (sic) newborn child, are both listed as principals or managing members of this David Destiny Discovery, so the Government believes they control these properties and assets.

More importantly, the house in Clovis is currently being rented. Rent checks, the Government obtained all the way through August of this year, are being deposited by Mr. He. He's cashing the checks, meaning whoever is renting the property is paying Mr. He the rent, and he's doing it -- he's depositing those checks. The Government believes this shows that he has control over these assets, even though they're in the name of David Destiny Discovery. It appears that Mr. He and, likely, Ms. Wang have control over these properties that together are worth over a million dollars.

The Government notes that in the Defendant's Pretrial Services report, he only disclosed having 10 to $20,000 in assets. The Government believes that's not true. The Government would say this is the second lie. The first lie is that he has not had -- that he has not had contact with his children since 2016. That's not true. He has a newborn child who was just issued a birth certificate and U.S. passport and flew to China, a passport application that he signed and submitted.

THE COURT: Was the passport application a United States or a Chinese?

MR. BARTON: United States passport application for the child, your Honor.

THE COURT: And did it say what the nationality was of the father?

MR. BARTON: China.

THE COURT: Okay. And let me ask you, in the 2015 entry into -- from Canada, does the United States have documentation as to his Chinese passport?

MR. BARTON: Yes, it does, your Honor.

THE COURT: And, again, it's in the name -- not David He?

MR. BARTON: The 2015 is Jia Bei Zhu, correct.

THE COURT: Jia Bei Zhu. And a Chinese passport?

MR. BARTON: Correct.

THE COURT: Okay.

MR. BARTON: Thank you, your Honor. And then, finally, I think the -- one second, your Honor, checking my notes. And thank you.

For those reasons, your Honor, the Government would submit -- or, finally, the Government would also note -- I believe the Government stated this before -- that during the various inspections that happened at the Reedley lab, Mr. He, a/k/a Jia Bei Zhu, was on bodycam speaking English fluently

with federal agents, state and local officials, talking about FDA rules and regulations and showing a mastery of the English language.

The Government believes that any allegation that he does not speak English or understand the language is not true at this point, and the Government has at least two accounts from former employees that worked at the Reedley lab, and the company's Fresno facility before that, saying that when Mr. Zhu, a/k/a Mr. He, is pressed, and under investigation or suspicion, he will feign not speaking English in order to try to avoid consequences.

With that, the Government would submit on its argument for detention, unless the Court has any questions.

THE COURT: No. You've answered my questions. Thank you, Mr. Barton.

Mr. Capozzi.

MR. CAPOZZI: I would like that discovery, because I do not have that.

THE COURT: Okay.

MR. CAPOZZI: And Defendant has told me about the Canadian citizenship and the passport, and there is --

THE COURT: Well, I don't know if he's a Canadian citizen. Is he a Canadian citizen?

MR. CAPOZZI: I believe he is. If he's got a Canadian passport, he is.

THE COURT: No, we were talking about a Chinese passport.

MR. BARTON: I believe he has -- the Government will say he has -- he at one point had lawful status in Canada. We're trying to figure -- confirm exactly --

THE COURT: Lawful status.

MR. CAPOZZI: Yes.

THE COURT: So I don't know if he has a passport.

MR. CAPOZZI: And --

THE COURT: I was talking about a Chinese passport.

MR. CAPOZZI: Yes. Okay. I don't think he came across the border illegally. I think he had a work permit, but I may be wrong.

THE COURT: I don't think that's what the Government is arguing.

MR. CAPOZZI: Okay.

THE COURT: It's just that, when he crossed the border, he had a Chinese passport, and it was in this name, not David He.

MR. CAPOZZI: That's true. Well, he would not deny that. He did change his name to David He subsequent to all of this. To say that he speaks English fluently is not true. He does speak English. Trust me, I've met with him a number of hours, and I need to have the interpreter to deal with it.

THE COURT: I understand that, and I don't take

anything that -- the fact that a Defendant is using an interpreter in their language doesn't suggest to me one thing or the other.

MR. CAPOZZI: Yeah.

THE COURT: I think the Government's point on that is that, when it's convenient, he will then say, "I don't speak English." I don't see the --

MR. CAPOZZI: He speaks English. There's no question about that.

THE COURT: Yes. Right now, obviously, somebody is more comfortable in their native language to understand proceedings.

MR. CAPOZZI: True.

THE COURT: I don't use that against anybody in a court proceeding.

MR. CAPOZZI: The issue with him is not that he doesn't understand English, it's communicating back in the English language as to what he understood is very difficult. But he needs an interpreter. There's no question about it.

We submitted -- I would ask for this new discovery. I'd like to have all that as soon as possible.

THE COURT: Right. I did order discovery a couple of days ago, with regard to the initial discovery, as well as reciprocal discovery. So, to the extent that he validly changed his name, which I'm not sure how he would do that in

the United States, having the status that he has, but that's something that you can provide in reciprocal discovery if that's of concern to you for a defense.

All right. Matter submitted?

MR. BARTON: Yes, your Honor.

MR. CAPOZZI: Yes, based on a report that he's a flight risk. So we don't deny that.

THE COURT: All right. Well, the Government --

MR. CAPOZZI: We're looking at putting up additional collateral.

THE COURT: The Government is also asking for obstruction under (f)(2)(B), right?

MR. BARTON: Correct, your Honor.

MR. CAPOZZI: Okay. What -- all right. Tell me what (f)(2)(D) (sic) is. I have no idea.

THE COURT: B. B as in boy. It's the obstruction of justice, but there's other components, such as intimidating a witness. He's not articulating that. He's just -- he's articulating the obstruction of justice point, and I think the argument -- well, I won't make the argument, other than I think I know what the argument is.

MR. BARTON: If --

THE COURT: Go ahead, Mr. Barton.

MR. BARTON: If I may, your Honor. I think the Government's primary contention for the obstruction of

justice prong is that the Defendant has told Pretrial Services he has $20,000 in assets.

The Government, in just a short time, has traced what it believes is, you know, nearly $2,000,000 in assets, in just real property, and on top of that, you've got $250,000 in monetary transfers to a company that the Defendant and the mother of his child control, finally coupled with his -- what the Government is alleging is another lie to Pretrial, that he has not had any contact with his children since 2016, when he just had a newborn child who has a U.S. passport and flew to China. For those reasons, the Government is also seeking detention on the basis of obstruction.

MR. CAPOZZI: If I can reply?

THE COURT: You have a --

MR. CAPOZZI: Okay.

THE COURT: Now I have a question.

MR. CAPOZZI: Sure.

THE COURT: You don't have a forfeiture allegation, though, do you, Mr. Barton?

MR. BARTON: We do not at this time, your Honor.

THE COURT: And is this, at least charge number one -- charge number one may be mandatory restitution, but is there an allegation, a proffer on the restitution?

MR. BARTON: There -- the Government would proffer

that the Government at this time anticipates restitution will be in the hundreds of thousands, if not millions, of dollars.

THE COURT: Okay.

MR. BARTON: And that would -- the basis for that would be COVID tests that were distributed that should not have lawfully been distributed to customers.

THE COURT: Okay. Because, in order to obstruct justice, there has to be something that he's obstructing. If you don't have a forfeiture allegation, but if you have restitution, there's an argument to that.

MR. BARTON: Correct, your Honor, and the Government would also, in that event -- and to the extent that, in the bail context, that the Defendant was trying to create a caveat of a bond to post, the Government believes he was trying to obscure his assets to reduce the amount of bond that the Court would take.

THE COURT: Okay.

MR. BARTON: If the Court thinks he only has $20,000, a bond would be much lower than it should be.

THE COURT: Okay. Now Mr. Capozzi.

MR. CAPOZZI: Yes. This $20,000 was in response to a question, "What do you have in your personal bank account?" That's what he said he had. Now, the monies that the Government is talking about may have been with the corporations. I don't know.

THE COURT: Well, I do know that Pretrial does go through an extensive asset list --

MR. CAPOZZI: They did. They did.

THE COURT: -- through their -- and they don't report everything. Like, they just said, "These are the assets that were reported." So they don't usually go to the negative sometimes, in the report, at least.

Correct, Mr. Bedrosian?

MR. BEDROSIAN: That's correct, your Honor.

THE COURT: Okay. All right.

MR. CAPOZZI: Right. No. It was a thorough report. There's no question about it.

THE COURT: A what?

MR. CAPOZZI: It was a thorough report.

THE COURT: Okay.

MR. CAPOZZI: Yes.

THE COURT: Okay. I thought I -- all right. Submitted?

MR. BARTON: Yes, your Honor.

MR. CAPOZZI: Yes.

THE COURT: Okay. All right. The Court has carefully considered the facts and circumstances, mindful of the standard under 3142 in this case. I find that the Government has shown by a preponderance of the evidence that the Defendant is a flight risk, and by preponderance of the

evidence that obstruction of justice would occur, and, therefore, I'm ordering him detained.

I find that there are no conditions or combination of conditions which would reasonably assure his appearance, and/or even to the extent the safety of the community to fashion, but I'm not ordering him detained as a danger to the community. I'm just noting that that is the balancing test that the Court is required to do under 3142.

I find that -- the reason for my decision is the nature and circumstance of the offense, which is the least considered factors, but, nevertheless, are factors that the Court does consider in assessing whether the Defendant should be released on conditions.

Additionally, the fact that he has no community ties, other than the nature of the allegations here, there is, at this point in time, insufficient financial resources, and we are unaware of accessibility at this point in time to those financial resources.

Frankly, the different names is of the largest concern as to this Defendant, as to who this Defendant, in fact, really is, using the various varieties of names, irrespective of the proffer that he changed his name. That's something not easily done, and it's something that requires legal process in order to effectuate that, at least in the United States.

So, for those reasons, he is ordered detained. His next court date -- I think I need to set that, because I don't think we set a status.

MR. CAPOZZI: No, it's set.

THE COURT: Or did we?

MR. CAPOZZI: Yes.

MR. BEDROSIAN: We did, your Honor.

THE COURT: We did. Okay. Thank you.

MR. CAPOZZI: I think it's January --

THE CLERK: 10th.

MR. CAPOZZI: Yes, the 10th. Yes.

THE COURT: January 10th, 2024, at 1:00 p.m. The Defendant is ordered to appear at that date and time.

Anything further, Mr. Capozzi?

MR. CAPOZZI: No, Judge. Thank you.

THE COURT: Mr. Barton, anything further?

MR. BARTON: No, your Honor. Thank you.

THE COURT: All right. Thank you.

(Proceedings concluded.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Crystal Thomas — 1/11/24
Transcriber, AAERT CERT *654 — Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.