# EXHIBIT

# J

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JIA BEI ZHU,<br>Defendant. | Case No. 23CR00219-NODJ-BAM<br><br>Fresno, California<br>Wednesday, April 24, 2024<br>2:21 p.m. |

MOTION FOR BAIL REVIEW
BEFORE THE HONORABLE ERICA P. GROSJEAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: HENRY Z. CARBAJAL, III, ESQ.
ARELIS M. CLEMENTE, ESQ.
United States Attorney's Office
2500 Tulare Street, Suite 4401
Fresno, California 93711
(559)47-4028

For the Defendant: ANTHONY P. CAPOZZI, ESQ.
Law Offices of Anthony P. Capozzi
1233 West Shaw Avenue
Suite 102
Fresno, California 93711
(559) 221-7997

Certified Court Interpreter: Simon Wong

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Case 1:23-cr-00219-DAD-EPG Document 90-10 Filed 12/05/24 Page 3 of 30



Court Recorder: Otilia Rosales
United States District Court
2500 Tulare Street
6th Floor
Fresno, California 93721

Transcriber: Crystal Thomas
Echo Reporting, Inc.
9711 Cactus Street, Suite B
Lakeside, California 92040
(858) 453-7590

FRESNO, CALIFORNIA, WEDNESDAY, APRIL 24, 2024 2:21 P.M.

--oOo--

(Call to order of the Court.)

THE COURT: Okay. Calling United States versus -- it's still listed as Jia Bei Zhu, who's also known as David He, 23-CR-219. We're here for a motion for bail review.

Let me take appearances, starting with defense counsel.

MR. CAPOZZI: Your Honor, Tony Capozzi appearing for Mr. He, who's present in court --

THE COURT: Thank you. Good --

MR. CAPOZZI: -- with a Chinese interpreter.

THE COURT: Thank you. Good afternoon, Mr. Capozzi. Good afternoon, Mr. He.

And for the United States?

MR. CARBAJAL: Good afternoon, your Honor. Henry Carbajal and Arelis Clemente for the United States.

THE COURT: Thank you, Mr. Carbajal and Ms. Clemente.

We're here for a motion for bail review. I have reviewed the papers as well as the transcript of the earlier hearing. I've also received a recommendation from Pretrial Services. Given Pretrial Services' recommendation, can I hear from the Government?

MR. CARBAJAL: Yes, your Honor. We would strongly

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 4 of 29



disagree with Pretrial Services' recommendation. It does not address two, I think -- well, it addresses in part but not comprehensively one very important thing, which is the use of the different aliases.

Now, the Government in its submission provided information on what I will term Mr. Zhu's Canadian identity, identifications. You'll note, your Honor, that the name David He doesn't come back in Canada's data. After that, several years later --

THE COURT: So, does he still have an operative Canadian passport in Zhu?

MR. CARBAJAL: I don't -- I -- I don't -- I believe that's expired as of September 2023.

THE COURT: Okay. So, his Canadian passport was Zhu, but it was expired?

MR. CARBAJAL: I believe so.

THE COURT: Okay.

MR. CARBAJAL: That's the latest information that we have.

THE COURT: Okay.

MR. CARBAJAL: And then we provided a Canadian driver's license as well. And --

THE COURT: And that's also under Zhu?

MR. CARBAJAL: Correct.

THE COURT: Okay.

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 5 of 29



MR. CARBAJAL: And Mr. Zhu, during the initial investigation for Pretrial Services' report, provided background information including his dates of residency, 1988 to 2014 in Canada, comes over to the United States in about 2014, resides in -- around the Central Valley area and various other places in the United States until he was arrested. That's what he stated to Pretrial Services.

And then in about 2020, he starts using the alias He, He, Qiang He, and then later changed that to David He. And, as Mr. Capozzi submitted in one of his exhibits, there is a letter detailing an asylum application not under the name Zhu but under the name He, and that's significant because the name Qiang He doesn't come up in Canada's database. There's no data associated with it. But if Jia Bei Zhu was disclosed in that letter, that data would come up.

THE COURT: Right.

MR. CARBAJAL: Okay. So -- and I would point this out as well because in Pretrial Services latest report, this is used as a point of mitigation, that he applied for asylum. All your Honor has is a cover letter. There are very strict confidentiality requirements for the application itself. Mr. -- Mr. Zhu or Mr. Capozzi could have put that in, but they didn't, and that's their business. However, it's -- it would be, I think, important if the Court's going

to consider that in mitigation to know what he was telling -- what he was stating in his I-589, the application to -- for asylum, versus what he told Pretrial Services.

But also, even in the cover letter, it notes purported persecution in China, but he told Pretrial Services in November he hadn't resided in China since 1998. And one of the bases for detention back in November was obstruction of justice, that Mr. He -- Mr. He, Mr. Zhu, was not honest with Pretrial Services in terms of assets, family identity, biographical information. Those things haven't changed. They're just, for some reason, not addressed in this latest Pretrial Services report.

So, I'd ask the -- the Court to consider that because the Government presented a lot of -- a lot of information in the initial detention hearing and also in its opposition for this review hearing, and it was one of the -- one of -- an important consideration for Judge Boone when he made his findings. So --

THE COURT: Where did you find the inconsistency about the Canadian residence?

MR. CARBAJAL: The inconsistency being in the cover letter for asylum, he there states persecution upon return to China. But in the Pretrial Services report, the November 22nd, 2023 report --

THE COURT: Um-hmm.

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 7 of 29



MR. CARBAJAL: -- he said he lived his entire life in China until he relocated to Canada in 1988, continued to reside in Canada until 2014. And this is page one of that report, your Honor --

THE COURT: Okay.

MR. CARBAJAL: -- dated November 22nd of 2023.

THE COURT: I see that. Let me pull up the cover letter to understand the inconsistency. You mean because he didn't point out the -- anything about Canada in the cover letter?

MR. CARBAJAL: No, that he -- he indicated to Pretrial Services he hadn't lived in China since 1988. So, what was the persecution that he was --

THE COURT: Oh, okay.

MR. CARBAJAL: -- referencing in the cover letter?

THE COURT: Okay. Persecution if he returns to China, but you think that was a long time ago. Okay.

MR. CARBAJAL: And -- and, again, like we're not sure what the analysis would have been if he disclosed Zhu and the fact that he was a Canadian citizen in that application. We don't know, and I know the Court doesn't have that information in his application because it wasn't submitted.

THE COURT: Um-hmm.

MR. CARBAJAL: Or just -- just reviewing the cover

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 8 of 29



letter compared to what information he's telling Pretrial Services, there's already an inconsistency.

THE COURT: But -- but I think the -- the point here is that to the extent there was a question about his name in the first detention hearing and Judge Boone was bothered by that, this is just showing a change from Qiang He to David He and --

MR. CARBAJAL: Correct.

THE COURT: -- still is not talking about the change from Zhu and is also not describing and disclosing both Zhu and his Canadian residence as far as we can tell?

MR. CARBAJAL: That's correct, your Honor.

THE COURT: Okay. Do you -- what did he tell law enforcement was his name?

MR. CARBAJAL: David He.

THE COURT: And what -- in the course of the investigation, was he holding himself out to investigators as David he?

MR. CARBAJAL: To investigators. But when we interviewed employees of his businesses, he was identified as Zhu.

THE COURT: Okay.

MR. CARBAJAL: Including the alias Jesse Zhu. And if you look at Exhibit 2 of our submission, your Honor, there is an FDA inspection report of a Chinese-based

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 9 of 29



business disclosing the owner of that business Adai (phonetic) Diagnostic, as Jia Bei Zhu.

THE COURT: Um-hmm.

MR. CARBAJAL: It's on pages two and four of that exhibit, Exhibit 2.

THE COURT: Okay.

(Pause.)

MR. CARBAJAL: The inconsistencies across identity, biographical information, business ties, all of those things are still -- I think really still support Judge Boone's initial finding that there's not been forthrightness on the part of the Defendant. That's not addressed in Pretrial Services' Report. It's not addressed by a bond, and it's certainly not addressed by an offer of an attorney that's been retained either by Zhu or these businesses that are associated with him but, you know, portrayed as not really associated with him --

THE COURT: Right.

MR. CARBAJAL: -- who can only watch him -- who can only check in with him four times a week. So, three days he's not going to be watched at all, and presumably be, you know, by -- by himself in that area of Las Vegas. I don't think that this -- this recommendation by Pretrial Services addresses all those risk factors which were very significant.

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 10 of 29



And then I would note as well Mr. Zhu not disclosing the -- he doesn't have family ties in the United States at all, and that's why what's being offered is an attorney who has a business relationship but an undisclosed personal relationship -- at least I didn't see it in the Pretrial Services Report -- and who has -- who has known Mr. Zhu for an unknown length of time. That has to be the proposal because all of his family is outside of the country, the mother of his child, the infant son.

THE COURT: They didn't come back from China?

MR. CARBAJAL: They did not.

THE COURT: Okay.

MR. CARBAJAL: They did not. And, in fact, the declaration submitted by Mr. Capozzi was executed in China.

THE COURT: Um-hmm.

MR. CARBAJAL: And -- and when they spoke to Ms. Wang -- when Pretrial Services spoke to her, I believe she was in China, again, with no -- no return date that we're aware of.

THE COURT: Um-hmm.

MR. CARBAJAL: And that's also very significant. Now, whether her flight was booked September 3rd -- and I can't tell from the screenshot. It's very hard to see. It -- it appears to me to be September 13th, but I know it's being represented as September 3rd when the -- when the

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 11 of 29



tickets were booked. However, investigative activity was already under way. Mr. -- Mr. Zhu was already interviewed by the FDA a few months before that. And, in any event, it's still of -- of huge significance. Even if she booked the tickets on September 3rd, well, the search warrant took place six days before she flew out. Now, that's kind of odd that your closest family ties, including your infant, you would think they would -- you know, if something that serious is happening, you would think that they would stay until that's addressed. But, instead, they flew out on one-way tickets.

We noted that Defendant still has the active business interests in the Chinese company Adai and that that was the company -- one of the companies used to fund the purchase of the property -- one of the properties being proposed for bond, and the property that he proposes to live in, which right now is a rental property. In fact, that -- that business, that LLC, David Destiny Discovery, owns about five properties. So, what's being offered is only a couple of rental properties off of a portfolio of different properties.

And I know there's been -- what Mr. Capozzi has submitted indicates some change in ownership in David Destiny Discovery. Mr. Zhu -- that's Mr. He -- is still the registered agent for that business even today. And he --

what has -- what it appears to be is at the time of the first detention hearing, in the lapse of a few months, steps have been taken to move Mr. He -- Mr. Zhu as Mr. He, his name off of these subsidiary businesses and into the name of Ms. Wang who is at this point outside of the jurisdictional reach of the Court. So, I think that's also very significant.

THE COURT: Mr. --

MR. CARBAJAL: As far as -- if I could respond to a few more things that Mr. Capozzi raised, I wasn't really clear on what the -- you know, there was a reference to pending lawsuits being some incentive for Mr. Zhu to stay. And I'm not sure. If he's the plaintiff, he could dismiss those at any time. He can do what he wants with them. And, in any event, you know, it's sort of a dual argument that, you know, Mr. He has these lawsuits and these -- this interest in sticking around, but the prop -- the businesses that are involved in the lawsuit somehow aren't his anymore and are independent, it's -- it's really not clear. What it appears to me is that there is a -- there was an effort undertaken by Mr. Zhu and his associates to, at least on paper, move his name off, but he still very much retains control over these items, especially when it's the mother of his child that is the managing member of the LLC and has a hand in the other businesses. That's what I see is -- is

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 13 of 29



going on.

And then as far as -- I think I raised a couple of items with the third party custodian, not living with Zhu, not having a known personal close relationship. Usually when a third party custodian is picked, it's someone that has a trust relationship with the defendant, a mother, a sibling, someone where there is a -- a moral compulsion to, you know, use best efforts to comply, and it's that trust relationship that drives the appropriateness of having them as a third party custodian that's typical. It's just strange that you have a -- not a friend, a business associate, business relationship and that what's portrayed in the Pretrial Services report is it's a business relationship with the businesses, not necessarily with Mr. Zhu, which then kind of -- it -- it's unclear what the -- you know, how -- how that's going to compel Mr. Zhu to comply, why he would care if a lawyer that he can hire and fire or that his wife -- you know, the companies that his -- his romantic partner now runs or has a hand in as a managing member can hire or fire, it's unclear why he would be compelled to be compliant.

And I would note also that there was a prior attorney that was proposed in November -- in the November 2023 report, Mr. Thomas. I'm not sure what happened to him. He had only known Mr. Zhu for four months, and that proposal

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 14 of 29



was that he -- that Mr. Zhu live with him, and I would note that that -- Pretrial -- Pretrial found that insufficient to address the risk factors, and I agree.

Here, it's even more removed, and you have -- again, you have Mr. Zhu, the proposal being that, you know, three days, may more, maybe even -- I don't know when Mr. Len (phonetic) plans to go check on him, but he's unsupervised with, you know, the use of different names an aliases, and he was somehow able to obtain a passport under a different name here in around 2020, 2021, and that's how he was able to make his asylum application. That's also an important consideration.

He's going to have plenty of time to figure out how to get another passport and perhaps another alias. And, so, unless the Court has other questions, I mean, that's what we wanted to respond to and -- and make sure the Court's aware that we do disagree with this recommendation, and we feel there aren't conditions that could assure his compliance and that he won't further obstruct.

THE COURT: Thank you.

Mr. Capozzi?

MR. CAPOZZI: Let me first start off with penalties in this case. He's charged with Title 18, 1001, lying about his name. He said, "My name is David He." It is. The penalty for that -- the offense level is a level

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 15 of 29



14. The penalty for that is 15 to 21 months. The penalty for sending out adulterated COVID kits -- that's Title 21 U.S.C. 331(a), the penalty, Judge, six -- zero to six months. If he's sentenced concurrently to the maximum, he's going to do 27 months. If he pled guilty, they would take three points off. He would end up doing maybe 11 months. He's already done seven months. Why would he run?

If I could show, he has a claim against the government for what they did to him. If I could present this to your clerk.

THE COURT: Thank you.

MR. CAPOZZI: That's him in the hospital the day he was arrested. And in the report, the agent said, "We softly pushed him down to the ground." Softly. Yet those are the injuries he suffered. He's filed -- he's hired Kevin Little to file the claim. He's hired Kevin Little to file a civil rights lawsuit and myself to sue the government for what they did to him there.

And when you read the statement from the Government -- I think I gave you the other copy. Let me make sure. Yeah, I did -- it points out how they approached him, and when they told him to kneel down, he turned to look at them as though he didn't understand. He speaks English barely, but every time I see him, I have to have an interpreter.

He didn't understand what they were saying, and they came, and they pushed him down to the ground, and you saw the injuries he has. He has a very viable claim. So, why would he flee when he's only got -- he's done seven months? He might have eight months more to go. It's not worth him fleeing because he is going to win on this particular case.

UMI and PBI has claims against the City of Reedley, County of Fresno for everything they destroyed, and it wasn't a lab. All the press says this was a lab down in Reedley. It was not a lab. It was a place for a warehouse to hold everything until the business in Fresno that the company was developing and paid over $100,000 to have a building, warehouse refurnished so they can move a lab there and start the process. They were intending on staying here. He was a consultant to them, and they were going to stay here because of the very profitable business.

I don't see how he would be a flight risk whatsoever. The -- he changed his name in China. It was Qiang He -- it's pronounced Her, not He.

THE COURT: Okay.

MR. CAPOZZI: He. And when he filed for asylum, he filed it under that name, and he changed his name legally. I put the document --

THE COURT: Where -- I guess where did Zhu come

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 17 of 29



from that he had a Canadian passport in it?

MR. CAPOZZI: Oh, he's not denying he's the same person. He changed his name.

THE COURT: Well, okay. When he --

MR. CAPOZZI: When he came from Canada --

THE COURT: But he didn't change it from Zhu to He. He --

MR. CAPOZZI: In China he did.

THE COURT: -- changed it from --

MR. CAPOZZI: In China, yes. He changed it in China, to claim Her, H-E.

THE COURT: There's some other document that was in China that went from Zhu to He?

MR. CAPOZZI: Well, try to get something from China. He can't --

THE COURT: Okay. Well, I mean, what about -- did you tell Canada he has a new name? Because that's where his license and his passport are all in Zhu.

MR. CAPOZZI: Right, because that was his name back then.

THE COURT: Well, has he told Canada, who has an outstanding civil lawsuit pending, that he's not Zhu, he's really --

MR. CAPOZZI: They know --

THE COURT: -- He?

MR. CAPOZZI: -- where he is. They've been communicating with me.

THE COURT: Okay.

MR. CAPOZZI: They know where he is in the Fresno County Jail under the name David He.

THE COURT: Okay.

MR. CAPOZZI: All right. And, again, he changed the name. When he came here, it was Qiang Her, too Chinese. He changed it from Qiang to David.

THE COURT: Yeah, I just don't think the issue has ever been about whether it's Qiang or David.

MR. CAPOZZI: Okay. That's fine. All right. But the point is he has these pending lawsuits, and for him to flee with so little time to do if he's convicted -- and I've gone through the evidence in this case. It is not as strong a case as the Government would portray it to be. He has these injuries. The two companies have the lawsuit -- will be filing the lawsuits. He's hired two attorneys. He -- the company has hired two attorneys. He's willing to put up the two properties fully paid for. It's over a million three or more. If he runs, he's going to lose his -- his partner I guess you'd call her, the mother of his child, would love all that property. He can't go back to China. He's filed for asylum.

THE COURT: So, what is the deal with the

ownership of the property? It sounded like it's actually just been changed to her hands this month.

MR. CAPOZZI: Well, I'd like to know that. That's not true, but I'd like to know that, where they have that information. I'd like to know. Present some evidence showing that.

THE COURT: So, you don't -- you don't know? Well, who owns -- who do you think owns it?

MR. CAPOZZI: I know who owns it. She does.

THE COURT: When did she start owning it?

MR. CAPOZZI: There's a grant deed -- hold on.

(Pause.)

MR. CAPOZZI: I submitted to Pretrial the property profiles, and for some reason we attached the Clovis property to it. I'm trying to see the recording date. May 27, 2022, before all this.

THE COURT: Okay. That's when Ms. Wang took it?

MR. CAPOZZI: The Clovis property in her --

THE COURT: Okay.

MR. CAPOZZI: Yeah, it was in her name.

THE COURT: Okay.

MR. CAPOZZI: But the other properties are in the DDD, LLC, which is hers. I just don't see how he's a flight risk, and that's what he's being held here for. Frankly, it's because of all of the press which has been so far off

base. He's a Chinese National, and I think there's a lot of prejudice against him. He's at the jail, and it's not easy for him being there at the jail and not speaking English. He can speak some English and try to understand what's going on, but there's fights breaking out all the time. There's a lot of prejudice over there. He is scared to death over there.

Now, if he were to be released, we would propose that he not work at any kind of a lab, that he would be working with me, I can assure you. He calls me 10 times a day. He'll be doing the same thing when he's in Las Vegas. And I'm sure, if the Court wanted to, we'll have him call his lawyer every single day or go see him every single day. He'll wear an ankle bracelet. He can't go anywhere. A GPS device would also -- would work.

THE COURT: So, does he have a detainer?

MR. CAPOZZI: No.

MR. CARBAJAL: He does, your Honor. It's recorded in the Pretrial Services Report.

THE COURT: So, he has an INS detainer?

MR. CARBAJAL: That's what's recorded in the Pretrial Services --

THE COURT: Does that mean that he's not an -- I mean, it doesn't actually legally affect my -- that he's not going to be released, but if he gets released, he's going to

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 21 of 29



go to INS?

MR. CAPOZZI: Well, he's filed for asylum.

THE COURT: Don't know?

MR. CARBAJAL: That has historically been the practice, but I -- I don't know if that's --

THE COURT: Okay.

MR. CAPOZZI: I can --

MR. CARBAJAL: Sometimes those are --

THE COURT: Okay.

MR. CAPOZZI: I can deal with the INS.

THE COURT: Okay.

MR. CAPOZZI: Those are always bondable.

THE COURT: Those are always what?

MR. CAPOZZI: Bondable, to put the bond --

THE COURT: Bondable?

MR. CAPOZZI: Yes.

THE COURT: Okay.

MR. CAPOZZI: Yes, the immigration bonds.

THE COURT: Okay.

MR. CARBAJAL: Your Honor, if I may respond to one thing?

THE COURT: Well, respond -- I guess, I think Mr. Capozzi's main argument is that there is so little time that he won't flee because of the time.

MR. CARBAJAL: And let me respond to that. The

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 22 of 29



guideline range that we expect from the misbranding is 63 to 78 months, with an acceptance, maybe getting down to about four years.

THE COURT: Okay.

MR. CAPOZZI: It's not complete.

MR. CARBAJAL: But I would note that if you look at the Townsend case that we cited in our brief, your Honor, when you consider the nature and circumstances of the offense, the analysis is really all counts taken together as if they were run consecutive.

THE COURT: Okay. Okay. Anything further, Mr. Capozzi?

MR. CAPOZZI: Your Honor, the most he's going to serve is 21 months in this particular case, and I don't see where in the world he's a flight risk, and there are so many combination of conditions that can preserve him to be present in court. He wants to be present in court. He wants to get to trial. My problem is I'm tied up in trial for months, and that's unfair to him.

Submitted, Judge.

THE COURT: Okay. I'm going to deny the motion for bail review. I want a -- a little preference to remember that this is not just me looking at all the things and making a different decision than Judge Boone. What I have to do is look at Judge Boone's decision and then see if

the new information, new material information would change that. So, I did review closely the initial detention decision of -- of Judge Boone, and he did find that detention made sense.

First, the nature and circumstances of the offense, although Mr. Capozzi has issues with that, I don't think that has changed the motion for bail review. Also, there -- there are no community ties. That continues to be the case. In fact, his -- the -- the newborn and the -- his -- the mother of, that did flee and have -- have not come back.

MR. CAPOZZI: Can I --

THE COURT: So, there are no -- so, there are no ties. No. You can say something in the record if you want after that.

MR. CAPOZZI: Okay.

THE COURT: I do agree when he said insufficient financial resources, at least now, that there is a bond. And then he also brought up the different name. In fact, he said that was the largest concern. Again, even though I saw the change from Qiang to David, I still did not see -- and I -- there was -- I was almost expecting to see that there had been some legal change from Zhu to Her. There -- there had not. So, I think Judge Boone's largest concern that he was actually operating in a legal capacity under two names

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 24 of 29



continues to be -- continues to be the case.

That -- I also note, as was in the initial report, that he fled a civil lawsuit in Canada and moved his business here. He has used many different company names, as well as aliases. ICE could identify -- could not identify the Defendant based on the information that was given that suggests that there were different names that were not connected, at least according to ICE.

He's had an unstable residence since the time he has moved from Canada in 2014. He's been in Seattle, Las Vegas, Tulare, and Los Angeles. Again, he has no family to stay with if he stays here.

I still am bothered with the -- what I think is just a misstatement that he said he had no children, and he does have a child. I did not find the reference to the declaration of Ms. Wang that said they have an agreement not to tell anyone about children persuasive at all. I don't understand what that's for, but that is not an excuse not to tell a law enforcement individual about your children when you're asked about your children.

He also -- it did not change the fact that he told Pretrial Services that he only had 10 to 20 thousand dollars in assets. This was also discussed at the hearing with Judge Boone. It appeared he had at least access to very significant assets but did not disclose any of that to

Pretrial Services.

He also -- at least it is alleged that he refused to comply with the arrest. I agree with Mr. Carbajal that I don't think the fact that he has a lawsuit makes it more or less likely that he would stay in or ameliorate the risk of flight. He does have a Chinese passport. He is a Chinese citizen. He has family in China, including his newborn and the mother of his newborn.

So, against that, I did look that there was a third party custodian that gives some weight, but it is unusual. They don't have a personal relationship. They have a business relationship. If there are financial consequences, it may hurt the third party custodian as well. So, I -- I weighed that, but I didn't think that that was enough.

The bond package is quite large. And, so, that was really -- if that could be ameliorated -- but I don't think so. They are rental properties. It appears that it's only one part of this business property, and I did not think that that alone was enough to change Judge Boone's decision that there are no condition or combination of conditions that will assure his appearance and also satisfy the concern about obstruction of justice. In fact, these -- hearing that there are different owners and that that is changing just elevates that concern.

Okay. What did you want to say?

MR. CAPOZZI: Just a couple of points. There was no evidence that his personal assets were more than $20,000. he might have access to the money through his girlfriend, the mother of his child, but his assets were $20,000 in the bank is what he said.

His -- the mother of his child didn't flee the country. She made a reservation --

THE COURT: I mean, it was about for posting of a bond, though, because it's -- the Defendant estimated he had 10 to 20 thousand dollars cash available for posting of a bond. He reported no other assets.

MR. CAPOZZI: Right.

THE COURT: And now he says that he does have access to very substantial assets --

MR. CAPOZZI: But not his assets.

THE COURT: -- and he is at least -- he has some role in that organization. What is the role in this -- in that organization?

MR. CAPOZZI: He's got his -- the mother of his child has possession and control.

THE COURT: I also heard he takes the actual checks, that he got checks from rentals and that he --

MR. CAPOZZI: Yeah, that he put --

THE COURT: -- was the person who deposited the

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 27 of 29



checks.

MR. CAPOZZI: Right.

THE COURT: So, he has an ability to deposit money in that account?

MR. CAPOZZI: Right.

THE COURT: He has access to the bank account?

MR. CAPOZZI: Yes. He can write checks on that, yes.

THE COURT: That would be enough to tell Pretrial Services that there was access to assets. They're these same --

MR. CAPOZZI: They're not his --

THE COURT: -- assets you're putting up right now.

MR. CAPOZZI: I'm not going to argue with you. Okay. And rental properties, one was a rental. The other is where he lived, along with his wife -- or his -- the mother of his child.

THE COURT: Okay.

MR. CAPOZZI: That's it.

THE COURT: Okay. Thank you very much.

MR. CARBAJAL: Thank you, Judge.

MR. CAPOZZI: Thank you, Judge.

THE COURT: Wait. Let's make sure we have -- do we need anything else? We need -- no. We have a status conference set. So, stat -- your next status conference is

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 28 of 29



May 22nd, 2024 at 1:00 p.m. before Judge McAuliffe.

MR. CAPOZZI: Yeah.

MR. CARBAJAL: Thank you, Judge.

THE COURT: Thank you.

MR. CAPOZZI: Thank you.

(Proceedings concluded.)

Case 1:23-cr-00219-NODJ-BAM Document 50 Filed 05/06/24 Page 29 of 29



I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Crystal Thomas 5/4/2024
Transcriber, AAERT CERT *654 Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.