ERIC GRANT
United States Attorney
JOSEPH D. BARTON
ARELIS M. CLEMENTE
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>JIA BEI ZHU,<br>aka Jesse Zhu, Qiang He, and David He,<br><br>                              Defendant. | CASE NO. 1:23-CR-00219-DAD<br><br>GOVERNMENT'S MOTIONS IN LIMINE |

## I.      BACKGROUND

The defendant, Jei Bei Zhu, is charged with importing faulty COVID-19 test kits from China and then fraudulently selling them to customers in the United States for millions of dollars from approximately August 2020 to March 2023 through his companies Universal Meditech Inc. ("UMI") and Prestige Biotech Inc. ("PBI") in Fresno and Reedley, California.  The false representations that defendant Zhu made to customers about the test kits included that: (1) they were approved by the FDA, (2) they were made in the United States, (3) they were made in connection with a certified lab, and (4) they would be made in high volumes in conformance with applicable ISO[1] quality standards.[2]

---

[1] An ISO standard is an internationally agreed-upon, expert-verified standard that defines best practices, specifications, and guidelines for products, services, and systems to ensure quality, safety, and efficiency.

[2] Defendant Zhu's romantic and business partner, Zhaoyan Wang, also faces these same charges. Defendant Wang, however, fled to China before authorities could arrest her and she has not returned to the United States.  Chinese authorities have declined to extradite her.

When UMI and PBI's customers became suspicious and requested to inspect the companies' facilities, defendant Zhu denied them access and fabricated reasons for the denials. The fabricated reasons included that the facilities were undergoing construction, and that proprietary and confidential information and technology was inside. In reality, defendant Zhu did not want the customers to see inside the facilities because the fraud would have become clear to them.

Defendant Zhu is also charged with making false statements to federal authorities about his identity and involvement with UMI and PBI. Defendant Zhu made these false statements when the authorities began investigating the companies in May 2023.

## II.    MOTIONS IN LIMINE

The government now moves for a pretrial finding that: (1) defendant Zhu's own statements, (2) co-conspirator statements made by former UMI and PBI employees Zhaolin Wang and Karekin Khatchadoorian, (3) other statements that Khatchadoorian and former UMI and PBI employee Kymlee Guan made to customers and the FDA, (4) other statements that customers made, and (5) other statements that are intertwined with the above statements and provide context to the conversations will be admissible as non-hearsay once they have been authenticated and the proper foundation has been laid. The government also moves for a pretrial finding that testimony and other evidence regarding certain others acts by defendant Zhu will be admissible once it has been authenticated and the proper foundation has been laid. Finally, the government moves to exclude any reference to prior misdemeanor convictions sustained by three of its potential witnesses.

### A.    Motions to Admit Statements

#### 1.    Motion to Admit Defendant Zhu's Own Statements

The government will seek to admit messages that defendant Zhu sent to a customer while negotiating the sale of COVID-19 test kits in late 2020. This includes admissions that he was the Chief Technical Officer for UMI and PBI and that UMI and PBI had close relationships with companies in China. It also includes false representations that the test kits and their components would be made in the United States and that they would be made in conformance with applicable ISO quality standards. These messages were produced to the defense in discovery and are marked as Trial Exhibits 160 and 203. Former UMI and PBI employee Karekin Khatchadoorian will testify that the references in these

messages to a "chemist" referred to defendant Zhu.

The government will also seek to admit instructions that defendant Zhu gave to UMI and PBI employees regarding the COVID-19 test kits.  This includes instructions to tell customers that the test kits were FDA-approved, made in the United States, and made in connection with a certified lab.  It also includes instructions to label the test kits as pregnancy test kits[3] and then ship them from China to the United States where they were put into boxes representing they were made in the United States before being sent to customers.  Finally, it includes instructions to prevent customers from inspecting UMI and PBI's facilities so they would not see what was really happening inside.  Several former UMI and PBI employees who the government plans to call as witnesses, including Khatchadoorian, Kymlee Guan, Xue "Sue" Liang, Ying "Lydia" Zhu, and Rita Bernal, will testify as to these facts.

The government will also seek to admit statements that defendant Zhu made on recorded body camera footage during the FDA's regulatory inspection of UMI and PBI in May 2023.  This includes admissions that he knew FDA approval was required to sell COVID-19 test kits in the United States and that UMI and PBI were related and owned by companies in China.  It is also includes false representations that he made such as that he: (1) was Qiang He aka David He instead of defendant Zhu, (2) was recently hired by UMI and PBI, (3) was unfamiliar with the companies' manufacturing and distribution histories, (4) did not have access to the companies' manufacturing, distribution, financial, ownership, or other records, and (5) did not know any details about the Chinese companies with which they were associated.

Finally, the government will seek to admit false representations that defendant Zhu made in applications for asylum that he submitted in 2021 where he maintained that he had obtained FDA approval to sell COVID-19 test kits in the United States.  These recordings, accompanying transcript, and applications were produced to the defense in discovery, and the transcript and applications are marked as Trial Exhibits 205 and 238.

The above admissions that defendant Zhu made are admissible for their truth as non-hearsay, opposing party admissions. Fed. R. Evid. 801(d)(2)(A).  The remaining false representations and

---

[3] FDA employees who the government plans to call as witnesses will testify that UMI and PBI were approved to import and sell pregnancy test kits in the United States but not the COVID-19 test kits.

instructions, on the other hand, are admissible as non-hearsay because they are being offered for reasons other than to prove the truth of the matters asserted.  The government will offer them to prove that they were said by defendant Zhu, which will establish his criminal intent for the fraudulent COVID-19 test kits sales and provide the basis for the false statements charge against him.  Fed. R. Evid. 801(c); *United States v. Calaway*, 524 F.2d 609, 613 (9th Cir. 1975); *United States v. Dupre*, 462 F.3d 131, 136-37 (2d Cir. 2006) (finding that emails from investors to defendants were not hearsay because they were offered to show notice to defendants of the fraudulent nature of their scheme rather than for their truth); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) ("We find that the statement properly was treated as non-hearsay because . . . [it] was introduced to show the effect on the listener . . . and to explain the circumstances under which her denial of the molestation took place."); *United States v. Cooke*, 675 F.3d 1153, 1156-57 (8th Cir. 2012) ("[Victim's] statement – 'I am 16 is that okay?'—is not hearsay, because it was not offered for its truth, but to provide context for [defendant's] response that it is 'cool' to have sex with a minor as long as she would not 'narc.'").

### 2.    Motion to Admit Co-Conspirator Statements

The government will seek to admit statements that Zhaolin Wang, who the government will show had a close relationship with defendant Zhu and was a quasi-manager or executive at UMI and PBI, made to Karekin Khatchadoorian.  Specifically, Khatchadoorian and several other former UMI and PBI employees will testify that, no later than December 2020, it was clear to everyone who worked there that large shipments of COVID-19 test kits were coming from China and being sold told customers based on the false representation that they were made in the United States.  Khatchadoorian will further testify that, shortly after being directed to lie in a legal proceeding and falsely state the UMI made COVID-19 test kits in the United States in mid-2022, Zhaolin Wang admitted to him that ninety-eight or ninety-nine percent of everything UMI and PBI sold to its customers came from China.

The government will also seek to admit messages that Khatchadoorian sent to customers at defendant Zhu's direction where he admitted that large orders such as 50,000 test kits would have to come from China.  These messages were produced to the defense in discovery and are marked as Trial Exhibit 185.

Under Federal Rule of Evidence ("FRE") 801(d)(2)(E), an out-of-court statement is admissible as non-hearsay when the government demonstrates by a preponderance of the evidence that: (1) a conspiracy existed when the statement was made, (2) both the declarant and the defendant against whom the statement is offered were members of the conspiracy, and (3) the statement was made during the course of, and in furtherance of, the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Strauss*, 678 F.2d 886, 891 (11th Cir. 1982) (summarizing the standard for admissibility of co-conspirator statements). In determining whether a conspiracy existed and who were its members, the scope of a "conspiracy" under FRE 801 is broader than the scope of a criminal conspiracy. This is because Congress intended the co-conspirator exception under FRE 801 "to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged." Fed. R. Evid. 801, Note to Subdivision 801(d)(2)(E) (1974) (*citing United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir. 1968); *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969)). Where conspiracy laws criminalize coordinated wrongdoing, Rule 801(d)(2)(E) addresses teamwork more generally. FRE 801(d)(2)(E) – Membership in a "Conspiracy," 30B Fed. Prac. & Proc. Evid. § 6778 (2024 ed.). The only question is "whether there was proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture." *United States v. Manning,* 56 F.3d 1188, 1197 (9th Cir. 1995).

Indeed, FRE 801 applies even when no conspiracy is charged in the indictment. *United States v. Fries*, 781 F.3d 1137, 1151-52 (9th Cir. 2015); *Manning,* 56 F.3d at 1197; *see also United States v. Williams*, 989 F.2d 1061, 1067 (9th Cir. 1993) ("[A]n individual need not be indicted to be considered a coconspirator for the purposes of rule 801(d)(2)(E)."). It is not even necessary for the party offering the statement to "identify the declarant by name." *United States v. Wenxia Man*, 891 F.3d 1253, 1272 (11th Cir. 2018) (statements by "owner of the unidentified email address" admitted under this exception).

The above statements show Zhaolin Wang and Khatchadoorian were members of the conspiracy with defendant Zhu who helped carry out the objective of the conspiracy, which was to fraudulently sell COVID-19 test kits. Therefore, their statements are admissible as co-conspirator statements.

### 3.    Motion to Admit Other Statements that Khatchadoorian and Guan made to Customers and the FDA

The government will seek to admit messages that Karekin Khatchadoorian and Kymlee Guan sent to customers and the FDA.  These are messages they sent to: (1) customers regarding whether the COVID-19 test kits were FDA-approved, made in the United States, and made in connection with a certified lab, (2) customers regarding the volume of test kits that UMI could make at a certain level of quality and the process used to make them, and (3) the FDA that falsely represented UMI was not selling any test kits in the United States.  The messages were produced to the defense in discovery and are marked as Trial Exhibits 118, 119, 159, 161, 162, 164, 165, 167 through 174,[4] and 182.  The messages are admissible for reasons other than to prove the truth of the matters asserted.  Indeed, the crux of the government's case is that the representations made in the messages were false and made at defendant Zhu's direction and therefore further establish his criminal intent.

### 4.    Motion to Admit Statements that UMI and PBI's Customers Made

The government will seek to admit messages that UMI and PBI's customers exchanged with Karekin Khatchadoorian and Kymlee Guan, as well as with each other, regarding the representations that the companies made to them about the COVID-19 test kits being FDA-approved, made in the United States, and made in connection with a certified lab, and about being allowed to inspect UMI and PBI's facilities.  These messages were produced to the defense in discovery and are marked as Trial Exhibits 29, 148 through 151,[5] 163, and 224.  They are admissible for reasons other than to prove the truth of the matters asserted.  Again, the government maintains that the representations made in the messages were false, and they serve to corroborate the customers' testimony that UMI and PBI actually made the representations to them.  They also show that the representations were material to the customers' decisions to go through with the sales, which are elements that the government must establish to prevail in this case.

---

[4] Exhibit 174 is a certified translation of Exhibits 165 and 167 through 173.

[5] Exhibits 150 and 151 are certified translations of Exhibits 148 and 149.

**5.    Motion to Admit Other, Intertwined Statements**

Some of the above statements that the government will seek to admit are intertwined with other statements made by customers, FDA officials, and other individuals.  These other statements are admissible to provide context and make the conversations intelligible to the jury.  *United States v. Bermea—Boone*, 563 F.3d 621, 626 (7th Cir. 2009); *United States v. Walter*, 434 F.3d 30, 34 (1st Cir. 2006) (holding taped statements of cooperating government witness admissible since statements were reciprocal and integrated utterances reasonably required to place defendant's admissions into context and make them intelligible); *United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir. 1985) (tape recorded statements introduced "to show that they were made," and to put the statements in context, rather than for their truth).

**B.    Motion to Admit Testimony Regarding Certain Prior Acts By Defendant Zhu**

The government will seek to admit evidence of certain other acts by defendant Zhu under FRE 404(b) as well as other theories of admissibility.  This evidence consists of:

(1) Testimony by Customs and Border Protection ("CBP") Officer Shejal Desai who encountered defendant Zhu in the early 2000s when he attempted to enter the United States from Canada.  Officer Desai will testify that defendant Zhu was found with embryos that were confiscated by the CBP because he did not have the appropriate regulatory approvals to bring them into the United States.  Officer Desai will also testify that she determined defendant Zhu was a principal at the company IND, which had operations in Canada;

(2) Business records found during the federal search warrant that the FDA Office of Criminal Investigation executed at UMI and PBI's facility in September 2023 that show defendant Zhu was involved with IND from at least the early 2000s until approximately 2015 and that IND was a predecessor to UMI.  These records were produced to the defense in discovery and are marked as Trial Exhibits 132, 133, and 142 through 144;

(3) Testimony by FDA employee Dr. Adam Ruben, who oversaw the recall of the COVID-19 test kits that UMI and PBI sold.  Dr. Ruben will testify that, during the recall, he reviewed FDA records and found that the FDA banned various types of test kits made by

IND in Canada from being imported into the United States around 2013 for several reasons. These reasons included that IND was found to have falsely labeled medical devices as being "Made in Canada" when they were actually made in China, maintained a double set of books that showed products were imported from somewhere different than the place that was declared on the customs records for the products, sold and distributed medical devices that were not licensed as required, and provided falsified documents and data to the FDA;

(4) Testimony provided by FDA employee Dr. Alyxandria Schubert, who reviewed an application that UMI submitted to the FDA in mid-2020 for approval to sell COVID-19 test kits in the United States. Dr. Schubert will testify that she found falsified data in the application and provide supporting documentation;

(5) Applications for a P.O. Box, asylum, and work authorization that show defendant Zhu made false statements about his identity and time in the United States, among other matters, in 2021 and 2023. The records were produced to the defense in discovery and are marked as Trial Exhibits 206 through 209; and

(6) A letter that defendant Zhu provided to FDA officials during the FDA's regulatory inspection of UMI and PBI's facility in May 2023 that shows he was aware of the FDA's requirements to sell and distribute pregnancy test kits in the United States. This letter was produced to the defense in discovery and is marked as Trial Exhibit 121;

This evidence is admissible as FRE 404(b) other acts evidence because it further establishes defendant Zhu's criminal intent and the absence of any mistake in committing the acts charged in this case. Specifically, this evidence shows that defendant Zhu was aware of the various FDA requirements with which someone must comply before selling things like COVID-19 test kits in the United States and that he knowingly and intentionally violated those requirements.

This evidence is also admissible as FRE 404(b) other acts evidence because it establishes that defendant Zhu is, in fact, defendant Zhu and is not Qiang He, David He, or someone else as charged in this case. Specifically, it shows that defendant Zhu went by the name Zhu for several years and later had a motive to hide his true identity from authorities and knowingly and intentionally did so.

Ample case law supports the government's position that this evidence is admissible as FRE 404(b) other acts evidence. *United States v. Fuchs*, 218 F.3d 957, 965 (9th Cir. 2000) (When offered to prove knowledge, other acts evidence "need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence."); *Huddleston v. United States,* 485 U.S. 683, 685 (1988) (explaining that "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from such conduct"); *United States v. Estrada*, 453 F.3d 1208, 1213 (9th Cir. 2006) (recognizing that many courts have allowed other acts evidence to be admitted where ten years or more have passed since the acts were committed and explaining that the evidence need only support a finding the acts were committed and does not have to conclusively show the acts were committed).

### C.     **<u>Motion to Exclude Witnesses' Prior Misdemeanor Convictions</u>**

Three of the witnesses that the government plans to call, Rita Bernal, Jacob Kurdys, and Chris Nagle, have prior misdemeanor convictions. Bernal's conviction is for providing a false identification to a peace officer in 1993. Kurdys' conviction is for domestic violence in 2020. And Nagle's convictions are for trespassing and obstruction in 2001 and assault in 2019. The government now moves to exclude any reference to these convictions at trial under FRE 901 because they are not felonies, do not bear on the witnesses' veracity, or are much more than ten years old such that their probative value would not substantially outweigh their prejudicial effect as is required for admission. *United States v. Robinson*, 2023 WL 6147569 (W.D. Wash. Sep. 20, 2023) (summarizing the rule and collecting cases that support excluding the convictions here).

For these reasons, the Court should grant the government's motions.

Dated:  April 2, 2026            By:    */s/ Joseph Barton*
                                             Joseph Barton
                                             Arelis Clemente
                                             Assistant United States Attorneys